# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION



UNITED STATES OF AMERICA

v.

DOUGLAS W. CORNETT,

*Defendant.*

Case No. 3:25mj 65

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Nicholas Olson, being duly sworn, depose and state:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been since June 2023. I attained a Bachelor of Science from Slippery Rock University. I successfully completed Basic Field Training Course (BFTC) at the Federal Bureau of Investigation (FBI), in Quantico, Virginia. Prior to joining the FBI, I was a sworn Vermont State Trooper from January 2015 to June 2023. I successfully completed the Basic Field Training Course for Full Time Law Enforcement Officers granted by the Vermont Criminal Justice Training Council in May 2015. I am also a U.S. Army National Guard veteran, serving from October 2011 to October 2017. I am currently assigned to the FBI Richmond Division, Fredericksburg Resident Agency. I currently investigate domestic and international terrorism, financial crimes, drug offenses, and gang activity.

2. As an FBI Special Agent, I have participated in the preparation and execution of numerous arrests and search warrants for criminal offenses including the trafficking of illegal narcotics, possession and trafficking of firearms by felons, domestic terrorism, and wire/mail fraud. I have been involved in cases that included the interception of wire and electronic communications. As a Special Agent, I have gained experience in investigative techniques,

including oral and electronic interceptions, and other types of electronic surveillance, physical surveillance, operating confidential human sources, controlled purchases of illegal drugs, consensually-monitored recordings, investigative interviews, trash searches, mail covers, financial investigations, administrative and grand jury subpoenas, and search and arrest warrants.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and warrant and does not set forth all of my knowledge about this matter. The information provided is based upon my personal knowledge, or that of other sworn law enforcement officers participating in this investigation.

A. **Relevant Statutes**

4. **Hate Crimes Prevention Act**, 18 U.S.C. § 249. This code section defines and proscribes hate crimes acts—that is, attacks on another person motivated by the actual or perceived race, color, religion, national origin, gender, sexual orientation, gender identity, or disability of any person. A § 249 offense involving bodily injury, death, or the use of a dangerous weapon are all crimes of violence because they necessarily involve the use of physical force. *See United States v. Roof*, 10 F.4th 314, 400-01 (4th Cir. 2021)

5. **Using, Carrying, Possessing a Firearm in Relation to a Crime of Violence**, 18 U.S.C. § 924(c). This code section proscribes (inter alia) the possession, brandishing, and discharge of a firearm during and in relation to any crime of violence. As noted above, an offense under 18 U.S.C. § 249 that involves *either* bodily injury, death, or the use of a dangerous weapon is a categorical "crime of violence" for purposes of this statute.

B. **Introductory Allegations**

At all times relevant to this Affidavit:

6. The defendant, DOUGLAS W. CORNETT ("CORNETT"), was a resident of Ruther

Glen, a town located within Caroline County, and located within the Eastern District of Virginia. CORNETT lived with two other individuals at this residence.

7. Victim 1 and Victim 2, both adult Latino males, resided and worked in the Commonwealth of Virginia.

8. SIG Sauer is a German firearm manufacturing company, with an American subsidiary (SIGARMS). Sig Sauer produces firearms at multiple facilities throughout the United States. SIG Sauer produces a particular handgun—the P320–at a manufacturing facility located in Exeter, New Hampshire.

9. Fiocchi Munizioni is an ammunition manufacturer headquartered in Italy, with production facilities located in Italy as well as Missouri and Arkansas. Fiocchi Munizioni manufactures (among other calibers) 9mm Luger handgun ammunition, which it produces with the initials "G.F.L." stamped on the bottom of each cartridge case.

10. PMC Ammunition is an American ammunition manufacturing company headquartered in Houston, Texas. PMC Ammunition utilizes a manufacturing facility located in South Korea to produce ammunition, including its 9mm ammunition.

11. Sheetz is an American fuel and convenience store company headquartered in Pennsylvania. Sheetz stores operate 24 hours a day, including a location in Thornburg, Virginia, a town in Spotsylvania County, within the Eastern District of Virginia. This Thornburg Sheetz is located at the Mile Marker 118 exit off of Interstate 95, and many of the store's customers are motorists traveling on Interstate 95.

12. Interstate 95 is the primary north-south interstate highway of the East Coast of the United States, passing through 15 states to connect Florida to Maine and reaching the international border with Canada. Approximately 110 million people travel on Interstate 95 a year, which

facilitates the movement of approximately 40 percent of the United States' gross domestic product.

### C. Probable Cause

13. On or about February 28, 2024, defendant DOUGLAS W. CORNETT ("CORNETT") left his residence in Spotsylvania County in the evening hours, driving a dark blue Honda Pilot SUV. CORNETT was armed at this time with a SIG Sauer P320, a 9mm handgun. CORNETT had loaded the P320 with a 17-shot magazine containing numerous rounds of G.F.L. 9mm Luger ammunition.

14. At approximately 9:00 p.m., CORNETT encountered a white panel truck being driven by Victim 1 on Interstate 95. CORNETT pulled his Honda Pilot up behind Victim 1 and began honking. Victim 1 allowed CORNETT an opportunity to pass, but CORNETT remained behind Victim 1. With CORNETT continuing to trail his truck, Victim 1 eventually pulled his truck into a Quarles Fleet Fueling station located at the Mile Marker 118 exit off of Interstate 95. Victim 1 knew that one of his friends—Witness 1—worked at the Quarles station.

15. Quarles's surveillance video of that evening captured CORNETT's Honda Pilot following closely behind Victim 1's truck as Victim 1 turned into the fueling station. CORNETT is visible behind the wheel of his Honda Pilot, wearing a cowboy hat.

16. Victim 1 asked Witness 1, who spoke English, to ask the driver of the Honda Pilot (CORNETT) what was wrong. Witness 1 spoke briefly to CORNETT. After the conversation, Quarles surveillance footage captured CORNETT drive around the Quarles parking lot after Witness 1 walked away from CORNETT's vehicle.

17. Victim 1 then drove to the Thornburg Sheetz gas station, located a short distance from the Quarles Fleet Fueling station, to fuel his truck. CORNETT followed Victim 1 in his SUV. At some point, Witness 1 called one of his friends—Victim 2, who was at that time fueling his

own truck at the Sheetz station—and informed Victim 2 that Victim 1 was driving to the Sheetz station, and that there was a man following Victim 1.

18. Victim 2 then observed Victim 1 drive up to one of the gas pumps at the Sheetz station, followed by CORNETT's Honda Pilot. CORNETT initially pulled his SUV up behind Victim 1's truck, but then moved to pull up alongside Victim 1, on the opposite side of the fuel pump Victim 1 was using. Victim 2 then walked over to CORNETT's vehicle, and asked CORNETT why he was following Victim 1. In response, CORNETT asked Victim 2 how long Victim 1 had been in the United States. Victim 2 turned to ask Victim 1 this question; Victim 1 answered "a year and half." Victim 2 relayed Victim 1's answer to CORNETT.

19. CORNETT then pulled out the Sig Sauer P320 handgun and opened fire from his vehicle, discharging six rounds, four of which struck Victim 1 and Victim 2. Victim 1 was shot twice in the stomach and once in the arm; Victim 2 was shot once in the stomach.

20. CORNETT willfully caused bodily injury to Victim 1 and Victim 2, during an attempt to kill those individuals, because of the actual and perceived national origin of Victim 1 and 2—specifically, because CORNETT understood Victim 1 and Victim 2 to be Latino immigrants to the United States.

21. After shooting Victim 1 and Victim 2, CORNETT then drove away, ultimately returning to his Ruther Glen residence, where he informed the two individuals that he lived with that he had just shot two men.

22. Law enforcement and emergency medical personnel responded to the Sheetz after receiving reports of the shooting. During and because of the ensuing law enforcement investigation, the Sheetz store was closed for a period of time, a consequence of the shooting that

necessarily affected interstate commerce through the business's loss of revenue during that time frame and the concomitant denial of the Sheetz's services to passing motorists and other customers.

23. Law enforcement officers soon identified CORNETT as the shooter, obtained a warrant for his arrest, and apprehended CORNETT the following day, February 29. Officers placed CORNETT into custody, and after acknowledging *Miranda* warnings, CORNETT agreed to speak to a detective. CORNETT admitted to shooting Victim 1 and Victim 2, and to retrieving several spent cartridge casings from his vehicle.

24. As the conversation continued, CORNETT admitted to the detective that at the time that he shot Victim 1 and Victim 2, "my intentions were clear in my brain, at that time." CORNETT then described his anger at illegal immigration, telling the detective that he was "pissed" about undocumented migrants receiving welfare funds, phones, and health insurance, and that he had "driven around before with the same thought." CORNETT later asked the detective whether he could be "charged for my thoughts," and went on to explain that he fantasized about flying an Apache helicopter gunship to the border and firing on undocumented migrants traveling into the United States in order "to deter" other undocumented migrants from attempting to cross the border.

25. During a search of CORNETT's residence, law enforcement officers recovered a cowboy hat identical to the hat visible in the Quarles station's surveillance footage, multiple Confederate flags, and a jean jacket with a Sig Sauer P320 9mm semiautomatic handgun in one pocket and a single 9mm G.F.L. cartridge in the other pocket. CORNETT's pants pocket contained three spent 9mm G.F.L. cartridge casings. The P320 pistol had a 17-round magazine inserted into it, loaded with seven G.F.L. 9mm rounds. Officers also found a second magazine with a 17-round capacity but only loaded with 15 rounds.

26. A separate search of CORNETT's Honda Pilot SUV recovered a user manual for a Sig Sauer P320, a rail-mounted tactical light that could be attached to a Sig Sauer P320, a sling shot, a double-bladed combat weapon, three more spent 9mm G.F.L. cartridge casings, and a box of 9mm ammunition containing a mix of G.F.L. and "PMC" stamped cartridges.

27. Detectives also interviewed CORNETT's housemates, who explained that CORNETT was a heavy consumer of cable television news, and that CORNETT was "kind of obsessed" by the news that he viewed regarding the entry of non-citizens into the United States at the United States' southern border.

## CONCLUSION

28. Based on the foregoing, I submit that there is probable cause for the arrest of DOUGLAS W. CORNETT for violations of 18 U.S.C. § 249(a)(2), Hate Crime Involving an Attempt to Kill, and 18 U.S.C. § 924(c), Use of a Firearm During and in Relation to a Crime of Violence.

_____
Nicholas Olson, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed to before me
this 11th day of June, 2025.

_____/s/_____
Hon. Summer L. Speight
United States Magistrate Judge